Christopher J. McCOY, Sr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–7789.

Court of Appeals of Alaska.

Aug. 30, 2002.

Rehearing Denied Oct. 4, 2002.

See 80 P.3d 755.

Opinion on Rehearing Nov. 22, 2002.

See 80 P.3d 757.

Diane L. Foster and Darin B. Goff, Assistant Public Defenders, Kenai, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

John W. Wolfe, Assistant District Attorney, Kenai, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

After reaching a plea bargain with the State, Christopher J. McCoy, Sr., pleaded no contest to one count of third-degree assault.[1] Superior Court Judge Harold M. Brown imposed 4 years' imprisonment with all but 18 months suspended. In this appeal, McCoy does not challenge his sentence. Instead, he argues that Judge Brown erred when he denied McCoy's motion to strike certain portions of the presentence report. Because we

1. AS 11.41.220(a)(1).

reject McCoy's arguments, we affirm the superior court.

### The challenged hearsay statements

Before sentencing, McCoy moved to strike certain paragraphs from the "collateral contacts" section of the presentence report and two paragraphs from an addendum to the presentence report that contained information about other assaultive conduct by McCoy. McCoy argued the purportedly objectionable paragraphs contained unverified hearsay statements.

■ Judge Brown ruled that the hearsay statements in the presentence report were sufficiently trustworthy for him to rely on them unless McCoy presented a challenge to their accuracy. He reasoned that the information in the addendum came from police reports in which the victim of the assaults, Michelle McCoy, reported her observations to the police. Judge Brown also noted that the addendum contained "confirming information as to what [the police] did in response." Judge Brown concluded that the other statements in the presentence report, "even though they might be so-called third-hand information, [are] the type of information that the court can consider verified for the purpose of ... this sentencing process."

In *Nukapigak v. State*,[2] the Alaska Supreme Court held that hearsay statements can be considered during sentencing if they are "sufficiently verified to appear trustworthy and the defendant was given the opportunity to deny [the truth of the statements] or present contrary evidence of his own."[3] The court defined "verified" as "corroborated or substantiated by supporting data or information."[4]

In that case, the presentence investigator spoke with several residents of Nukapigak's village. The presentence report included the villagers' descriptions of Nukapigak's misconduct.[5] Even though the villagers' reports were not based on first-hand knowledge, the supreme court ruled that this information was verified. The villagers were identified in the presentence report, and Nukapigak, who was supplied a copy of the report, was entitled to challenge the accuracy of the reports or offer contrary evidence.[6]

Here, the probation officer reported that McCoy's father-in-law described a history of domestic violence in the McCoy home. Included in the report were the father-in-law's description of the difficulties his grandchildren had when in McCoy's home, the grandchildrens' complaints to him, and his description of the domestic violence against his daughter caused by McCoy. The probation officer's source, the father-in-law, is identified and whatever data the father-in-law provided that was not based on his first-hand knowledge was attributed to either his grandchildren or his daughter. Under the rationale of *Nukapigak*, this constitutes verified information. Therefore, Judge Brown was not required to strike this material from the presentence report.

### Whether a presentence investigator may review and use the information in a defendant's juvenile probation file without first obtaining special permission from the superior court

■ McCoy objected to the portion of the presentence report that discussed his contacts with the juvenile justice system (contacts that did not lead to formal adjudications of delinquency). He argued that a presentence investigator is not authorized to examine a defendant's juvenile records without first obtaining the superior court's permission.

■ We first address a subsidiary question of law. When McCoy's attorney argued that the presentence investigator had no authority to use information from McCoy's juvenile file, the attorney asked Judge Brown to consider one of this Court's memorandum

---

**2.** 562 P.2d 697 (Alaska 1977), *aff'd on reh'g*, 576 P.2d 982, 984–85 (Alaska 1978).

**3.** *Id.* at 701.

**4.** *Id.* at 701, n. 2.

**5.** *See Nukapigak v. State*, 576 P.2d 982, 983 (Alaska 1978).

**6.** *Id.*

opinions, *State v. Westerlin*,[7] because Chief Judge Bryner's concurring opinion in *Westerlin* discusses (but reaches no conclusion regarding) this issue. The State responded by asking Judge Brown to strike McCoy's pleading; the State asserted that the defense attorney had violated Alaska Appellate Rule 214(d), which declares that memorandum decisions of this court are "without precedential effect and may not be cited in the courts of this state."

*Black's Law Dictionary* defines "cite" as "refer to or adduce as precedent or authority."[8] McCoy's attorney did not claim that our memorandum opinion in *Westerlin* was precedent. It is arguable that the defense attorney adduced Judge Bryner's concurrence as "authority" in the broadest sense of that term—that is, as a record of what another judge thought about a legal issue, for whatever persuasive power it might have. But we do not read Appellate Rule 214(d) to preclude this. Rather, the rule forbids reliance on a memorandum opinion as "authority" in a narrower sense—what *Black's Law Dictionary* calls "imperative authority": "[a] legal writing taken as definitive or decisive; esp[ecially], a judicial ... decision cited as precedent."[9]

McCoy's attorney did not claim or imply that our unpublished decision in *Westerlin* resolved the issue of statutory interpretation presented in McCoy's case or that it restricted the scope of Judge Brown's decision-making authority on this issue. Thus, the defense attorney did not violate Appellate Rule 214(d) by bringing *Westerlin* to Judge Brown's attention.

We now turn to the merits of McCoy's argument. McCoy concedes that Alaska Criminal Rule 32.1(b)(1) specifically requires presentence reports to include "any finding of delinquency." But McCoy contends that prior judicial approval is needed before a presentence investigator can refer to any other aspect of a defendant's juvenile history—*i.e.*, contacts that did not lead to a formal

delinquency adjudication. To support this contention, McCoy relies on a statute, AS 47.12.300, and a court rule, Alaska Delinquency Rule 27(a)(1).

Alaska Statute 47.12.300(d) states that the superior court is required to seal "all the court's official records pertaining to [a] minor" within 30 days of the time the court relinquishes juvenile jurisdiction over the minor (normally, at the time of the minor's 18th birthday). The statute then declares that, once these official court records are sealed, "[no] person may ... use these ... records for any purpose except that the court may order their use for good cause shown or may order their use by an officer of the court in making a presentenc[e] report."

In fact, not only does section 300(d) seemingly prohibit the presentence investigator from "using" the juvenile records without a court order, but section 300(e) seemingly prevents the presentence investigator from even looking at these records. Section 300(e) declares that the records "may be inspected only with the court's permission and only by persons having a legitimate interest in them."

McCoy also relies on Alaska Delinquency Rule 27(a)(1), but this rule appears to authorize the practice McCoy is challenging. Delinquency Rule 27(a)(1) states in pertinent part:

> The court records of a juvenile delinquency proceeding are confidential.... Information [concerning those court records] may not be released and access to the records may not be permitted except as authorized by statute or upon court order for good cause shown, ... except that ... [a] probation officer employed by the [State of Alaska] may review delinquency proceedings records for the sole purpose of preparing a presentence report on the individual whose juvenile record is reviewed. The records may be used in the sentencing proceeding and attached to the probation officer's report.

---

7. Memorandum Opinion and Judgment No. 3111 (Alaska App., March 29, 1995).

8. BLACK'S LAW DICTIONARY 237 (7th ed.1999).

9. *Id.* at 128–29.

Nevertheless, McCoy argues that this rule supports his position. He points out that the rule speaks of a probation officer's authority to review "delinquency proceedings records" when preparing a presentence report. McCoy contends that this phrase encompasses only "official court records" of the juvenile proceeding. By this, he means that Rule 27(a)(1) covers the *court's* records of the proceedings held in a juvenile case but not the material contained in the juvenile probation officer's file (unless that material happens to be incorporated into a court pleading or order). To gain access to the material in the juvenile probation officer's file, McCoy argues, a presentence investigator must formally seek and obtain the superior court's permission.

The problem with McCoy's suggested interpretation of Rule 27(a)(1) is that it would leave the juvenile probation officer's file unprotected. As stated in the first sentence of Rule 27(a), the purpose of the rule is to establish the confidentiality of "[t]he court records of a juvenile delinquency proceeding"—a phrase which we construe to be equivalent to "delinquency proceedings records" (the shorter phrase used later in that same paragraph). If, as McCoy argues, these two phrases refer only to the papers in the superior court's file, then there would be no rule to protect the confidentiality of the juvenile probation officer's file.

Moreover, under McCoy's interpretation, AS 47.12.300 would not protect the contents of the juvenile probation officer's file, either. That statute requires the sealing of "all the court's official records pertaining to [a] minor." If, as McCoy suggests, "the court's official records" do not include the juvenile probation officer's file, then the statute likewise offers no protection to that file.

Because McCoy's interpretation leads to results that are inconsistent with the protective goals shared by the legislature and the

supreme court, we reject his interpretation.[10] Instead, we construe the phrases used in Delinquency Rule 27(a)—"court records of a juvenile delinquency proceeding" and "delinquency proceedings records"—to include the contents of the juvenile probation officer's file. Similarly, we conclude that the phrase used in AS 47.12.300(d)—"the court's official records pertaining to [a] minor"—likewise encompasses the juvenile probation officer's file.

We must next address the differences between AS 47.12.300 and Delinquency Rule 27(a)(1). Under AS 47.12.300, a presentence investigator must secure special permission from the superior court before inspecting and using juvenile records. But under Delinquency Rule 27(a)(1), a presentence investigator is automatically entitled to inspect and use these records for the purpose of preparing an adult presentence report on that individual.

We resolve this conflict by noting that the difference is one of procedure. Both the statute and the rule allow a presentence investigator to review juvenile records. However, AS 47.12.300 requires the presentence investigator to obtain special permission from the superior court in each separate case, while Delinquency Rule 27(a)(1) allows the presentence investigator to review the records without obtaining prior case-specific approval from the superior court. In such instances, the procedure specified in the court rule takes precedence over any contrary procedure specified in the statute.[11]

We therefore hold that a presentence investigator in an adult criminal case may review and use the materials found in the defendant's juvenile court files (including the juvenile probation officer's files) without first obtaining case-specific permission from the superior court. Judge Brown acted correctly when he denied McCoy's motion to strike

---

**10.** See *Ellingstad v. State, Dep't. of Natural Resources*, 979 P.2d 1000, 1006 (Alaska 1999) (a court should not construe the language of a statute in such a way as to lead to a result that is "contrary to the purpose of the statute"); *Millman v. State*, 841 P.2d 190, 195 (Alaska App. 1992) ("a court is ... obliged to avoid construing statutes in a way that leads to patently absurd results or to defeat of the obvious legislative purpose behind the statute").

**11.** See *Gieffels v. State*, 552 P.2d 661, 667–68 (Alaska 1976), *disapproved of on other grounds by Miller v. State*, 617 P.2d 516 (Alaska 1980); *Main v. State*, 668 P.2d 868, 872–73 (Alaska App. 1983).

this information from McCoy's presentence report.

### Conclusion

The judgment of the superior court is AFFIRMED.