2015 COA 43

Russell **WEISFIELD**, Plaintiff–Appellant,

v.

The **CITY OF ARVADA**, a municipal corporation and political subdivision of the State of Colorado; **Marc Williams**, in his official capacity as Mayor of the City of Arvada; **Bob Dyer**, in his official capacity as council member for the City of Arvada; **Bob Fifer**, in his official capacity as council member for the City of Arvada; **Don Allard**, in his official capacity as council member for the City of Arvada; **John Marriot**, in his official capacity as council member for the City of Arvada; **Mark McGoff**, in his official capacity as council member and Mayor Pro Tem for the City of Arvada; and **Jerry Marks**, Defendants–Appellees.

**Court of Appeals No. 14CA0807**

Colorado Court of Appeals, Div. IV.

Announced April 9, 2015

Schlueter, Mahoney & Ross, P.C., Elliot D. Fladen, Denver, Colorado, for Plaintiff–Appellant.

Christopher K. Daly, City Attorney, Roberto Ramirez, Senior Assistant City Attorney, Arvada, Colorado, for Defendants–Appellees.

Opinion by CHIEF JUDGE LOEB

¶ 1 Plaintiff, Russell Weisfield, appeals the district court order granting the motion to dismiss for lack of standing filed by defendants, the City of Arvada; Marc Williams, Bob Dyer, Bob Fifer, Don Allard, John Marriot, Mark McGoff, in their official capacities; and Jerry Marks. We reverse and remand with directions.

## I.  Background

¶ 2 This case concerns the use of secret ballots by Arvada's mayor and city council members to fill a vacancy on the city council for Arvada District 1. Weisfield is a resident of that district. Williams, the mayor of Arvada, and council members Dyer, Fifer, Allard, Marriot, and McGoff participated in the vote. Marks was selected to fill the vacancy and is now the council member representing District 1.

¶ 3 The underlying facts of this case are not in dispute. After giving proper notice to the public, the Arvada City Council held a special meeting on January 10, 2014, to select among five candidates to fill the District 1 vacancy. The meeting was recorded and televised. The city council conducted four rounds of secret ballot voting in which candidates who did not receive a sufficient number of votes were eliminated. The council members reported the total number of votes each candidate received after each round, but did not report who voted for which candidates. At the end of the four rounds of secret ballot voting, Marks was the only remaining candidate. The council members then held an open vote in which they unanimously elected Marks to fill the vacancy.

¶ 4 Weisfield filed this action in district court, alleging that the city council's use of secret ballots to fill the vacancy violated Colorado's Open Meetings Law. Defendants moved to dismiss pursuant to C.R.C.P. 12(b)(1) and C.R.C.P. 12(b)(5). After briefing, the district court granted the motion to dismiss in a written order. The court ruled that Weisfield failed to allege an injury in fact to a legally protected interest, and, therefore, did not have standing. Because the court granted the motion to dismiss un-

der C.R.C.P. 12(b)(1) based on lack of standing, the court did not address defendants' other asserted grounds for dismissal under C.R.C.P. 12(b)(5).

¶ 5 This appeal followed.

## II. Standard of Review

¶ 6 We apply a mixed standard of review to motions to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1). *Levine v. Katz*, 192 P.3d 1008, 1012 (Colo. App. 2006). We defer to the district court's factual findings unless they are clearly erroneous, but we review de novo the district court's legal conclusions. *Id.*

¶ 7 In order for a court to have jurisdiction over a dispute, the plaintiff must have standing to bring the case. *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004). Whether the plaintiff has standing is a question of law that we review de novo. *Id.* at 856.

## III. Applicable Law

### A. Standing

■ ¶ 8 Colorado courts apply the two-prong test for standing articulated in *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). To satisfy that test, the plaintiff must establish that (1) he or she suffered an injury in fact and (2) the injury was to a legally protected interest. *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 8, 338 P.3d 1002 (citing *Wimberly*, 194 Colo. at 168, 570 P.2d at 539). This test for standing in Colorado "has traditionally been relatively easy to satisfy." *Ainscough*, 90 P.3d at 856; *see also Freedom from Religion Found.*, ¶ 17 ("Colorado courts provide for broad individual standing.").

¶ 9 The injury-in-fact requirement maintains the separation of powers mandated by article III of the Colorado Constitution. *Freedom from Religion Found.*, ¶ 9. "Because judicial determination of an issue may result in disapproval of legislative or executive acts, this constitutional basis for standing ensures that judicial 'determination may not be had at the suit of any and all members of the public.'" *Id.* (quoting *Wimberly*, 194 Colo. at 167, 570 P.2d at 538). It also ensures that courts limit their inquiries to actual controversies. *Id.* ("The requirement ensures a 'concrete adverseness' that sharpens the presentation of issues to the court.").

¶ 10 Both tangible and intangible injuries may satisfy the injury-in-fact requirement. *Id.* Thus, "[d]eprivations of many legally created rights, although themselves intangible, are nevertheless injuries-in-fact." *Ainscough*, 90 P.3d at 856. However, an injury that is overly "indirect and incidental" in relation to the defendant's conduct will not convey standing. *Freedom from Religion Found.*, ¶ 9 (internal quotation marks omitted); *Ainscough*, 90 P.3d at 856.

■ ¶ 11 The legally-protected-interest requirement promotes judicial self-restraint. *Freedom from Religion Found.*, ¶ 10. Claims for relief under the constitution, common law, a statute, or a rule or regulation satisfy the legally-protected-interest requirement. *Id.*

### B. Colorado's Open Meetings Law

¶ 12 Colorado's Open Meetings Law, enacted by initiative in 1972, declares that it is "a matter of statewide concern and the policy of this state that the formation of public policy is public business and may not be conducted in secret." § 24–6–401, C.R.S. 2014.

¶ 13 Colorado appellate court opinions have emphasized the importance of the public policy underlying the Open Meetings Law. *See Hanover Sch. Dist. No. 28 v. Barbour*, 171 P.3d 223, 227 (Colo. 2007); *Cole v. State*, 673 P.2d 345, 347 (Colo. 1983); *Benson v. McCormick*, 195 Colo. 381, 383, 578 P.2d 651, 653 (1978). Our supreme court has explained that the statute protects the "public's right of access to public information," a right that is vitally important to our democratic system of government. *Cole*, 673 P.2d at 350; *see also Benson*, 195 Colo. at 383, 578 P.2d at 653 ("Our Open Meetings Law ... reflects the considered judgment of the Colorado electorate that democratic government best serves the commonwealth if its decisional processes are open to public scrutiny."). In *Cole*, the supreme court described how the statute furthers the democratic process:

¶ 14 The intent of the Open Meetings Law is that

> citizens be given the opportunity to obtain information about and to participate in the legislative decision-making process which affects, both directly and indirectly, their personal interests. A citizen does not intelligently participate in the legislative decision-making process merely by witnessing the final tallying of an already predetermined vote.

673 P.2d at 349. Because of the important public interests advanced by this statute, it "should be interpreted most favorably to protect the ultimate beneficiary, the public." *Id.*

¶ 15 The Open Meetings Law sets out specific requirements for how public business must be conducted in section 24–6–402(2), C.R.S. 2014. As relevant here, the statute explicitly prohibits the use of secret ballots:

> Neither a state nor a local public body may adopt any proposed policy, position, resolution, rule, or regulation or take formal action by secret ballot.... For purposes of this subparagraph (IV), 'secret ballot' means a vote cast in such a way that the identity of the person voting or the position taken in such vote is withheld from the public.

§ 24–6–402(2)(d)(IV). The General Assembly added this provision in 2012 in direct response to an opinion by a division of this court, which held that the use of secret ballots to fill vacancies on a city council did not violate the Open Meetings Law as it existed at the time. *See Henderson v. City of Fort Morgan,* 277 P.3d 853, 854–55 (Colo. App. 2011).

¶ 16 The Open Meetings Law also provides a mechanism for enforcement by private citizens. Section 24–6–402(8) states that "[n]o resolution, rule, regulation, ordinance, or formal action of a state or local public body shall be valid unless taken or made at a meeting that meets the requirements of subsection (2) of this section." Section 24–6–402(9) provides:

> The courts of record of this state shall have jurisdiction to issue injunctions to enforce the purposes of this section upon application by *any citizen of this state*. In any action in which the court finds a violation of this section, the court shall award the citizen prevailing in such action costs and reasonable attorney fees. In the event the court does not find a violation of this section, it shall award costs and reasonable attorney fees to the prevailing party if the court finds that the action was frivolous, vexatious, or groundless.[1]

(Emphasis added.) A division of this court has described citizens who brought suit under these provisions as "private attorneys general, who, through the exercise of their public spirit and private resources, caused a public body to comply with the Open Meetings Law." *Van Alstyne v. Hous. Auth. of City of Pueblo,* 985 P.2d 97, 100 (Colo. App. 1999).

¶ 17 With this legal framework in mind, we now turn to whether Weisfield has standing.

## IV. Analysis

¶ 18 Weisfield contends that the district court erred in ruling that he did not have standing to bring this action under the Open Meetings Law. We agree.

¶ 19 Applying the *Wimberly* test for standing, we first consider whether Weisfield has a legally protected interest under the Open Meetings Law; we then address whether he has sufficiently alleged an injury in fact to that interest.[2]

---

**1.** Section 24–6–402(9), C.R.S. 2014, was amended in 2014, apparently in response to the district court's ruling that Weisfield lacked standing in this case. The quoted language is now subsection (9)(b). The General Assembly added the following language as a new subsection (9)(a): "Any person denied or threatened with denial of any of the rights that are conferred on the public by this part 4 has suffered an injury in fact and, therefore, has standing to challenge the violation of this part 4." This amendment became effective June 6, 2014, and neither party contends

that the amendment is retroactive. Thus, we do not consider the effect of section 24–6–402(9)(a) in our analysis.

**2.** Weisfield contends that we should apply the test articulated in *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission,* 620 P.2d 1051 (Colo. 1980). That case employed a three-part test for determining whether a private remedy is implicit in a statute that does not expressly provide for one. *Id.* at 1058. Because the Open Meetings Law expressly provides for a private

### A. Legally Protected Interest

¶ 20 We conclude that, under the circumstances here, the Open Meetings Law gives Weisfield a legally protected interest in having his city council fill its vacancy in an open manner that complies with the statute.

¶ 21 In interpreting the Open Meetings Law, our task is to give effect to the intent of the legislature. *Klinger v. Adams Cnty. Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo. 2006); *see also Huber v. Colo. Mining Ass'n,* 264 P.3d 884, 889 (Colo. 2011) ("We use the general rules of statutory construction in construing citizen-initiated measures."). To do so, we examine the statute's plain language within the context of the statute as a whole, giving words their plain and ordinary meaning. *Triple Crown at Observatory Vill. Ass'n v. Vill. Homes of Colo., Inc.,* 2013 COA 150M, ¶ 10, 328 P.3d 275. If the language is clear and unambiguous, we do not resort to other rules of statutory construction. *Klinger,* 130 P.3d at 1031.

¶ 22 Based on the plain language of the Open Meetings Law, we conclude that that statute creates a legally protected interest on behalf of Colorado citizens to have public business conducted openly in conformity with the statutory provisions. This interest is broadly stated in the statute's declaration of policy, which provides that "the formation of public policy is public business and may not be conducted in secret." § 24-6-401. The statute then sets out specific requirements with which public bodies must comply, including providing notice and public access to meetings where public business is discussed, as well as a specific prohibition on taking formal action by the use of secret ballots. § 24-6-402(2). Finally, the statute provides a legal remedy whereby private citizens may enforce its provisions. § 24-6-402(8) and (9). In sum, the Open Meetings Law articulates an interest in having public business conducted openly and provides a mechanism for private citizens to protect that interest. We, therefore, conclude that the statute creates a

legally protected interest on behalf of Colorado citizens in having public bodies conduct public business openly in conformity with its provisions.[3]

¶ 23 Here, Weisfield challenges the formal action of a public body—the Arvada City Council—in selecting a new council member to represent Arvada's District 1. Weisfield is a citizen of Colorado, as specifically contemplated under the statute. *See* § 24-6-402(9). Moreover, he is a resident of Arvada's District 1, the district where the vacancy arose. Under these circumstances, we conclude that Weisfield has a legally protected interest in having his city council fill the District 1 vacancy in a manner that complies with the Open Meetings Law.

¶ 24 We need not determine whether the expansive language of section of 24-6-402(9) should be read literally to allow any citizen of Colorado to challenge any violation of the Open Meetings Law, even if, for example, the citizen does not reside within the jurisdiction of the public body whose actions are being challenged. As a resident of Arvada, Weisfield plainly falls within the sphere of citizens who have a legally protected interest in having the Arvada City Council comply with the Open Meetings Law.

### B. Injury in Fact

¶ 25 We also conclude that Weisfield has sufficiently alleged an injury in fact to this legally protected interest.

¶ 26 To determine whether there is an injury in fact, we accept as true the allegations in the complaint. *Ainscough,* 90 P.3d at 857.

¶ 27 As noted above, Weisfield alleges that he is a citizen of Colorado and a resident of Arvada District 1. He alleges that the Arvada City Council selected a new council member to fill the District 1 vacancy using four rounds of secret ballot voting, in violation of the express statutory prohibition against se-

---

remedy in section 24-6-402(9), an analysis using the *Cloverleaf* test is unnecessary here.

**3.** Weisfield uses the phrase "governmental transparency" to describe the interest protected under the Open Meetings Law. Defendants argue that

the word "transparency" does not appear anywhere in the statute. Regardless of semantics, the mandate of the Open Meetings Law is clear: in Colorado, public bodies must conduct public business openly and not in secret.

cret ballots in the Open Meetings Law. The record further shows that as a direct result of this alleged violation, Weisfield does not know how each council member voted during the process for selecting the new council member who now represents him.

¶ 28 We conclude that these allegations are sufficient to demonstrate an injury in fact to Weisfield's legally protected interest under the Open Meetings Law. Weisfield's allegations show that he has been deprived of his legally protected right to have the city council that represents him take action in an open manner rather than by secret ballot. *See* § 24–6–402(2)(d)(IV); § 24–6–402(9). In affirming the constitutionality of the Open Meetings Law, our supreme court stated, "[a] free self-governing people needs full information concerning the activities of its government not only to shape its views of policy and to vote intelligently in elections, but also to compel the state, the agent of the people, to act responsibly and account for its actions." *Cole,* 673 P.2d at 350. Thus, Weisfield's lack of knowledge about how his council members voted is, in our view, precisely the type of injury contemplated under the Open Meetings Law. Moreover, the injury is neither "indirect" nor "incidental" to defendants' conduct, *Freedom from Religion Found.,* ¶ 9; rather, it is directly related to defendants' alleged violation of the statute. We therefore conclude that Weisfield has demonstrated an injury in fact sufficient to convey standing to pursue this action.

¶ 29 We disagree with the district court's conclusion—and defendants' contention on appeal—that, under the circumstances here, Weisfield is required to show some additional injury to satisfy the injury-in-fact requirement. In its written order, the district court noted that Weisfield

> does not list himself among the four finalists eliminated by the voting procedure (nor does he contend that he had an individual interest in the outcome of the election). He does not allege that Jerry Marks is failing to adequately represent his interests as a resident of District 1, and does not even assert that he is otherwise disenfranchised by the appointment of Mr. Marks.

This analysis exhibits too restrictive an interpretation of the Open Meetings Law and, indeed, the broad and liberal test for standing in Colorado. As discussed above, the Open Meetings Law protects the "public's right of access to public information." *Cole,* 673 P.2d at 350. The statute's mandate that public business be conducted openly is plainly intended to protect the interests of the public, not just individual candidates. *See id.* at 349 (The Open Meetings Law "should be interpreted most favorably to protect the ultimate beneficiary, the public."). Likewise, the statute does not regulate substantive *outcomes*; rather, it requires the decision-making *process* to be conducted openly and not in secret. Thus, we see no reason why Weisfield should be required to demonstrate that he was one of the candidates being considered for the vacant position or that Marks has somehow acted against his personal interests. Weisfield's allegation that he was deprived of access to information about how the council members voted is sufficient to demonstrate an injury in fact under the Open Meetings Law.

¶ 30 We are not persuaded that *Pueblo School District Number 60 v. Colorado High School Activities Association,* 30 P.3d 752 (Colo. App. 2000), requires a different result. In that case, a school district brought an action against a high school activities association, alleging that the association failed to comply with the notice provisions of the Open Meetings Law before conducting meetings in which it denied the school district's petition to change its sports classification. *Id.* at 753. A division of this court held that there was no injury in fact sufficient to convey standing because the school district conceded that it had actual notice of the meetings in question. *Id.* at 753–54.

¶ 31 In this case, by contrast, the injury that Weisfield complains of has not been remedied by independent circumstances. He submitted an affidavit to the district court stating that he does not know and has never known which city council members cast which ballots during the four rounds of secret ballot voting. Defendants do not claim that Weisfield has independent knowledge of how each council member voted. Thus, un-

like the school district in *Pueblo*, Weisfield alleges an injury under the Open Meetings Law that remains unresolved.

¶ 32 The district court acknowledged that the precise holding and facts in *Pueblo* are distinguishable from this case and, therefore, that *Pueblo* is not dispositive. Nevertheless, the district court relied on certain language from *Pueblo* in concluding that Weisfield did not have standing under the Open Meetings Law:

> [S]tanding is not a requirement that may be abrogated by statute. A plaintiff may not invoke the power of the judicial branch of government without standing. While a statute may purport to grant a cause of action to a large group of persons, a plaintiff must, nevertheless, suffer an injury in fact.

*Id.* at 753–54 (citations omitted).

¶ 33 This language does not alter our analysis in this case. As noted, the division's holding in *Pueblo* was based on the undisputed fact that the school district conceded actual notice; thus, this additional language is dicta. Moreover, the district court interpreted this language far more broadly than is warranted. As we read *Pueblo*, the opinion merely notes that, in some circumstances, simply referencing a statutory cause of action is insufficient to demonstrate an injury in fact. Because the school district in *Pueblo* had actual notice of the meetings, it was not injured by the defendant's failure to comply with statutory notice provisions. Under those circumstances, where no injury resulted from the violation, merely referencing a statutory cause of action was insufficient to confer standing.

¶ 34 In this case, however, Weisfield's lack of knowledge about how the council members voted is an injury under the Open Meetings Law that has not been remedied by external circumstances. As a citizen seeking to enforce open, public decision-making by the city council that represents him, Weisfield is precisely the type of plaintiff contemplated under the Open Meetings Law's enforcement provisions. *See* § 24-6-402(9); *Van Alstyne,*

985 P.2d at 100 (describing citizen-plaintiffs as "private attorneys general").

¶ 35 For these reasons, we conclude that Weisfield has alleged an injury in fact to a legally protected interest, and, therefore, has standing to bring this action under the Open Meetings Law.

## V. Attorney Fees

¶ 36 Because we have only addressed the issue of standing and not the merits of Weisfield's action, we decline to address his request for attorney fees pursuant to section 24-6-402(9), as premature. On remand, the district court may consider such a request at an appropriate time.

## VI. Conclusion

¶ 37 The order is reversed, and the case is remanded for further proceedings, including the district court's consideration of the alleged grounds for dismissal asserted in defendants' motion to dismiss under C.R.C.P. 12(b)(5).

JUDGE PLANK * and JUDGE NEY* concur.