25CA0940 Marshall v BOCC 04-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0940
Douglas County District Court No. 25CV30410
Honorable Robert Lung, Judge

---

Robert C. Marshall, Lora Thomas, and Julie Gooden,

Plaintiffs-Appellants,

v.

The Board of County Commissioners for Douglas County, Colorado,

Defendant-Appellee.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TAUBMAN*
Moultrie and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

---

Zansberg Beylkin LLC, Steven D. Zansberg, Michael Beylkin, Denver, Colorado,
for Plaintiffs-Appellants

Jeffrey A. Garcia, County Attorney, Kelly Dunnaway, Deputy County Attorney,
Andrew C. Steers, Deputy County Attorney, Castle Rock, Colorado, for
Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Plaintiffs, Robert C. Marshall, Lora Thomas, and Julie Gooden, appeal the trial court's order denying their motion for a preliminary injunction against defendant, the Douglas County Board of County Commissioners (BOCC).  We reverse and remand for further proceedings consistent with this opinion.

I.    Background

¶ 2    On March 25, 2025, at a publicly noticed business meeting, the BOCC passed two resolutions to initiate the process by which Douglas County voters would determine whether to adopt a county home rule charter.  *See* Colo. Const. art. XIV, § 16(1) (authorizing the registered electors of each county to vote "to adopt a home rule charter establishing the organization and structure of county government"); §§ 30-11-501 to -503, C.R.S. 2025 (a county wishing to adopt a home rule charter must hold an election at which registered electors vote for or against the charter).  The resolutions established that Douglas County would hold a special election on the formation of a home rule charter in June 2025.

¶ 3    Two months before the election, plaintiffs filed a complaint alleging that a series of closed meetings held by the BOCC in the lead-up to the March 25 business meeting violated the Colorado

1

Open Meetings Law (COML), which requires that any meeting of a public body where public business is discussed, or formal action is taken, must be open to the public. § 24-6-402(2)(b), C.R.S. 2025. Plaintiffs alleged that the BOCC had wrongfully held eleven closed meetings between December 2024 and April 2025 at which it discussed public business (advanced planning meetings). Plaintiffs also alleged that the BOCC had failed to comply with the statutory requirements to convene an executive session on three other occasions (executive sessions).

¶ 4 Plaintiffs therefore sought a declaration stating that the BOCC had violated COML. They also sought injunctive relief, and in a motion for preliminary injunction filed the same day as the complaint, they asked the trial court to enjoin the BOCC from further violating COML and from holding the June 2025 special election.

¶ 5 After an evidentiary hearing, the trial court denied plaintiffs' request for a preliminary injunction. The court concluded that plaintiffs could not show a reasonable probability of success on the merits, as required by *Rathke v. MacFarlane*, 648 P.2d 648, 653 (Colo. 1982), because neither the advanced planning meetings nor

the executive sessions related to the BOCC's policymaking function, and therefore they were not subject to COML. The court also found that plaintiffs had not sufficiently demonstrated that enjoining the election was warranted under the remaining *Rathke* factors.

¶ 6    Plaintiffs now appeal, arguing that the trial court erred by denying their requested injunction.

## II.    Mootness

¶ 7    As a threshold matter, we address the BOCC's arguments that we should dismiss this appeal as moot because Douglas County voters rejected the proposed home rule charter at the June 2025 special election or, alternatively, that plaintiffs failed to preserve these contentions for appeal. We conclude they are neither moot nor unpreserved.

¶ 8    "Whether an appeal is moot is a question of law that we review de novo." *People v. Fritz*, 2014 COA 108, ¶ 20, 356 P.3d 927, 930. "Colorado courts invoke their judicial power only when an actual controversy exists." *DePriest v. People*, 2021 CO 40, ¶ 8, 487 P.3d 658, 662 (citation omitted). If such a controversy no longer exists, or if the relief granted by a court would have no practical effect on an existing controversy, the issue before the court is generally

considered moot and unreviewable. *People in Interest of O.C.*, 2013 CO 56, ¶ 9, 308 P.3d 1218, 1220. Exceptions to the mootness doctrine exist when the matter involves an issue that is capable of repetition, yet evading review, or involves a question of great public importance or recurring constitutional violations, *Anderson v. Applewood Water Ass'n*, 2016 COA 162, ¶ 27, 409 P.3d 611, 618, but plaintiffs do not argue either exception applies here.

¶ 9 Plaintiffs concede, and we agree, that the portion of their motion requesting that the court enjoin the June 2025 special election, on the ground that the resolutions establishing the election were invalid, is moot because the election has occurred and the voters have rejected the proposed home rule charter. *See Stell v. Boulder Cnty. Dep't of Soc. Servs.*, 92 P.3d 910, 914 (Colo. 2004) ("[A] case is deemed moot when the relief granted by the court would not have a practical effect upon an actual and existing controversy.").

¶ 10 However, plaintiffs argue that the other basis for their motion — the BOCC's alleged COML violations — has not been rendered moot. Rather, they argue, an "actual controversy" exists with respect to that portion of their motion because the BOCC maintains

4

that COML does not apply to the challenged meetings, which indicates that it "fully intended (and still intends) to continue its challenged practices in the absence of an injunction."

¶ 11    In support, plaintiffs direct us to Douglas County's website, which indicates that the BOCC continues to host closed meetings.[1] Douglas Cnty., Colo., *Board of County Commissioners: Meetings*, https://perma.cc/VU7V-LFBC.  Given plaintiffs' allegations of continuing challenged conduct, we conclude that plaintiffs' request for injunctive relief against further violations of COML concerns an "existing controversy" on which the relief granted by this court may have a "practical effect." *O.C.*, ¶ 9, 308 P.3d at 1220.  Accordingly, we conclude that that issue is not moot.

¶ 12    The BOCC alternatively contends that even if the appeal is not moot, plaintiffs waived "the broader issue of the injunction" by

---

[1] Because the BOCC does not dispute the contents of this webpage, and because the county website is self-authenticating, we take judicial notice of it.  *See Shook v. Pitkin Cnty. Bd. of Cnty. Comm'rs*, 2015 COA 84, ¶ 12 n.4, 411 P.3d 158, 161 n.4; *see also* CRE 201(b) (the contents of a webpage on a specific date and time are not subject to reasonable dispute); CRE 902(5) (a public authority's publications are self-authenticating).

requesting only that the trial court enjoin the election in their closing argument at the preliminary injunction hearing.

¶ 13     Though "when a party fails to assert an argument in the trial court but raises it for the first time on appeal, the assertion is deemed waived," *O'Connell v. Biomet, Inc.*, 250 P.3d 1278, 1282 (Colo. App. 2010), that is not what occurred here.  Plaintiffs' motion for a preliminary injunction requested "injunctive relief that prohibits [the BOCC] from further COML violations."  In plaintiffs' opening statement at the preliminary injunction hearing, they asked the court to enjoin "two things" — the "pattern and practice of violating the open meetings law by conducting discussions among two or more board members of public business outside of public view," and the June 2025 special election.  In closing, plaintiffs repeated that the BOCC had "repeatedly violated the Colorado open meetings law by discussing matters of public business . . . without providing public notice and without allowing the public to attend."

¶ 14     Because this contention was squarely before the trial court, we conclude plaintiffs have not waived it.  *See O'Connell*, 250 P.3d at 1282.

III.    Preliminary Injunctive Relief

¶ 15    Plaintiffs challenge the trial court's denial of their motion for a preliminary injunction on two grounds.  First, they argue that the court erred by concluding that there was no reasonable probability of success on the merits because COML did not apply to the challenged meetings.  Second, they contend that the court erred by determining that injunctive relief was not warranted under the remaining *Rathke* factors.  We agree on the first point and reverse the trial court's order, but because the circumstances on remand may be different, we remand for further proceedings.

A.    Standard of Review and Applicable Law

¶ 16    A court may grant a preliminary injunction if it finds that the moving party has demonstrated (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury exists that may be prevented by injunctive relief; (3) there is no plain, speedy, and adequate remedy at law; (4) there is no disservice to the public interest; (5) the balance of equities favors the injunction; and (6) the injunction preserves the status quo pending a trial on the merits.  *Rathke*, 648 P.2d at 653-54.

¶ 17     Whether to grant a preliminary injunction is a decision that rests within the sound discretion of the district court. *Markwell v. Cooke*, 2021 CO 17, ¶ 21, 482 P.3d 422, 426. Accordingly, we review a district court's preliminary injunction ruling for an abuse of discretion "and will only overturn it when the court's conclusion is manifestly unreasonable, arbitrary, or unfair." *Westpac Aspen Invs., LLC v. Residences at Little Nell Dev., LLC*, 284 P.3d 131, 138 (Colo. App. 2011). "On review of a preliminary injunction, the trial court's factual findings will be upheld unless they are so clearly erroneous as to find no support in the record." *Bill Barrett Corp. v. Lembke*, 2018 COA 134, ¶ 16, 488 P.3d 390, 394, *aff'd on other grounds*, 2020 CO 73, 474 P.3d 46.

¶ 18     However, "we review the district court's application of [COML] de novo." *Anzalone v. Bd. of Trs.*, 2024 COA 18, ¶ 12, 549 P.3d 255, 259.

¶ 19     COML declares that it is "a matter of statewide concern and the policy of this state that the formation of public policy is public business and may not be conducted in secret." § 24-6-401, C.R.S. 2025. "Because of the important public interests advanced by [the] statute, it 'should be interpreted most favorably to protect the

8

ultimate beneficiary, the public.'" *Weisfield v. City of Arvada*, 2015 COA 43, ¶ 14, 361 P.3d 1069, 1072 (quoting *Cole v. State*, 673 P.2d 345, 349 (Colo. 1983)).

¶ 20     COML provides, as relevant here, that "[a]ll meetings of a quorum . . . of any local public body . . . at which any public business is discussed or at which any formal action *may be taken* are declared to be public meetings open to the public at all times." § 24-6-402(2)(b) (emphasis added).  The statute contains only limited exceptions to this general rule.  § 24-6-402(2)(e)-(f) (COML does not apply "to any chance meeting or social gathering at which discussion of public business is not the central purpose" or "to the day-to-day oversight of property or supervision of employees.").  If a meeting is subject to COML, it may be held only after "full and timely notice to the public." § 24-6-402(2)(c).  Minutes of the meeting must be taken and must be open to public inspection. § 24-6-402(2)(d)(II).

¶ 21     The statute does not define "public business," but the supreme court has explained that "a meeting must be part of the policy-making process to be subject to the requirements of [COML]." *Bd. of Cnty. Comm'rs v. Costilla Cnty. Conservancy Dist.*, 88 P.3d

1188, 1194 (Colo. 2004). A meeting is part of the policymaking process when "a demonstrated link between the meeting and the policy-making powers of the government entity holding or attending the meeting" exists. *Id.* For example, a meeting "convened to discuss or undertake one of the actions enumerated in the remedy provision of [COML]" would be subject to the statute — meaning, a "resolution, rule, regulation, ordinance, or formal action." *Id.*; § 24-6-402(8). So too would a meeting "held for the purpose of discussing a pending measure or action, which is subsequently 'rubber stamped' by the public body holding or attending the meeting." *Costilla Cnty.*, 88 P.3d at 1194.

¶ 22 COML provides that courts may "issue injunctions to enforce the purposes" of the statute, "upon application by any citizen of this state." § 24-6-402(9)(b).

## B. Probability of Success on the Merits

¶ 23 Plaintiffs contend that the court erred by concluding that they did not show a reasonable probability of success on the merits, arguing that the court wrongly concluded COML did not apply to either the advanced planning meetings or the executive sessions. We agree.

### 1. Advanced Planning Meetings

¶ 24    In support of their motion to enjoin the BOCC from violating COML, plaintiffs argued that the BOCC had held eleven closed, unnoticed "advanced planning meetings" between December 2024 and April 2025 that all three commissioners attended.

¶ 25    Plaintiffs asserted that agendas from these eleven meetings, obtained through a public records request, demonstrated unequivocally that the BOCC intended to discuss public business in them. They argued that the agendas included "numerous substantive issues that were within the policymaking function of [the BOCC]," including "whether to conduct a survey of the board's constituents, who would conduct such a survey, [and] at what cost; a resolution on immigration"; and "orchestrating the logistics of rolling out" the home rule charter vote "to the public, through a press conference."

¶ 26    The trial court rejected this argument. Emphasizing testimony that "these meetings are held . . . to coordinate schedules and discuss . . . communications with the public and media" and that "there were no substantive discussions about the Home Rule Resolutions at these meetings," the court concluded that the

11

advanced planning meetings "were limited to day-to-day direction to staff." The court reasoned that the agenda topics, "such as scheduling a tour of [a cancer center], a citizen survey, or detailing the release of a public statement," demonstrated that these meetings "are administrative meetings for the purpose of coordinating schedules and coordinating public outreach."

¶ 27 On appeal, plaintiffs contend that because the undisputed evidence showed that the BOCC discussed public business at these meetings, the court erred in reaching this conclusion.

¶ 28 As an initial matter, we reject the BOCC's argument that because plaintiffs did not prove all eleven advanced planning meetings occurred, their claim cannot prevail. COML's requirements are triggered not only when a meeting of a local public body is held, but also when such a meeting is contemplated. *See* § 24-6-402(2)(b) (COML applies to "[a]ll meetings of a quorum . . . of any local public body . . . at which any public business is discussed or at which any formal action *may be taken*" (emphasis added)). The trial court found that plaintiffs had demonstrated "several" of these meetings occurred, "which were not noticed and which the public [could not] attend." The court also found that it was

12

"undisputed that . . . a quorum of the Board was in attendance or expected to attend these [meetings]." The record supports these findings, and we therefore reject this argument.

¶ 29 Additionally, although the record supports the trial court's other factual findings, the court did not address the inclusion of other agenda topics, such as an immigration resolution and the proposed home rule charter, that clearly concerned public business or policymaking. Accordingly, we disagree with the trial court's finding that these meetings were not "part of the policy-making process."

¶ 30 As plaintiffs argue, the agenda items for the advanced planning meetings included (1) planned tactics to support the proposed home rule resolution, including "Research and Planning" and a "Launch on March 25 with: news release, embargoed media outreach, Web page with FAQs [frequently asked questions], [and] talking points"; and (2) an "Immigration Resolution." The agendas also included line items for a resolution to be released during "Developmental Disabilities Awareness Month" and a "Work Zone Awareness Week Resolution."

¶ 31    Consequently, the court's conclusion that none of these meetings were "a part of the policy-making process" is clearly erroneous. *See Cronk v. Bowers*, 2023 COA 68M, ¶ 12, 537 P.3d 401, 405 ("A court's factual finding is clearly erroneous when it has no record support." (citation omitted)). The resolutions initiating the home rule charter vote, the immigration resolution, and other resolutions listed on the agenda fell squarely under the "actions enumerated in the remedy provision of [COML]," which includes resolutions. *Costilla Cnty.*, 88 P.3d at 1194; § 24-6-402(8) ("No *resolution* . . . of a . . . local public body shall be valid unless taken or made at a meeting that meets the requirements of [COML]." (emphasis added)). Therefore, meetings discussing these and other resolutions were subject to COML; the trial court clearly erred by concluding otherwise.

## 2.    Executive Sessions

¶ 32    Plaintiffs' preliminary injunction motion also alleged that on three separate occasions, the BOCC violated COML's statutory requirements for convening closed executive sessions.

¶ 33    COML "contains exceptions allowing public bodies to convene in closed-door executive sessions under certain circumstances."

14

*Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶ 31, 555 P.3d 69, 77. As relevant here, a public body may convene an executive session to "[c]onference[] with an attorney for the local public body for the purposes of receiving legal advice on specific legal questions." § 24-6-402(4)(b).

¶ 34　　However, local public bodies must "strictly comply" with the statutory requirements for convening executive sessions. *Gumina v. City of Sterling*, 119 P.3d 527, 530 (Colo. App. 2004). Properly convening an executive session requires (1) the vote of two-thirds of the quorum of the body present; (2) an announcement of the topic to be discussed that provides "as much detail as possible without compromising the purpose of meeting in private"; and (3) a recording of the discussions that occur during the session, unless protected by the attorney-client privilege. *Bjornsen v. Bd. of Cnty. Comm'rs*, 2019 COA 59, ¶ 16, 487 P.3d 1015, 1020; § 24-6-402(2)(d.5)(II), (4). To avoid the recording requirement, the local public body's attorney must either state on the record that the discussion was privileged or "provide a signed statement attesting that the [unrecorded portion] constituted a privileged attorney-client communication." § 24-6-402(2)(d.5)(II)(B).

15

¶ 35    Plaintiffs argued that at improperly convened executive sessions, "several county elected officials, as well as the County Attorney . . . discussed at great length a detailed, nine-point plan to have [Douglas County] become a home rule chartered form of government."  Plaintiffs contended that these discussions violated COML.

¶ 36    At the preliminary injunction hearing, the county attorney testified that these three meetings had been convened so that he could "speak with . . . other elected officials and answer their questions" about the process of forming a home rule charter.  He testified that he gave a PowerPoint presentation to attendees that included his legal research about how to do so.  He said that he also answered "more substantive" questions, including about "timing of the election," whether "the sheriff [has] to be appointed," and whether "you have to have a five-member board."  He also said that he answered other legal questions about the election, the charter commission, campaigning, and campaign finance.

¶ 37    The county attorney confirmed that no minutes reflecting a vote to convene an executive session existed, and that he neither

16

recorded the executive sessions nor provided a signed attestation that no recording was necessary due to attorney-client privilege.

¶ 38　　In its order denying plaintiffs' requested preliminary injunction, the court found that the BOCC had failed to strictly adhere to "the proper steps for adjourning [sic] an Executive Session from an open meeting under [COML]." However, because it also found that "the resolutions were never discussed" at these meetings, that "no formal action regarding home rule was taken," and that the attendees had "simply asked legal questions about the process," the court concluded that COML did not apply.

¶ 39　　This conclusion is flawed for two reasons.

¶ 40　　First, the court's finding that "the resolutions were never discussed" at these meetings is contradicted by the county attorney's testimony that the executive sessions were called to "tell [the other elected officials] what was going to happen . . . that on the 25th, there was going to be a meeting." It is additionally contradicted by the county attorney's PowerPoint presentation, which explained that the first step to form a home rule charter was for the "BOCC to adopt [a] Home Rule Resolution" and "County Division Resolution." Moreover, the county attorney testified that

he shared drafts of the resolutions with the commissioners as early as February 2025, a month before the executive sessions. This evidence cuts against the BOCC's argument that there were no policy discussions or decisions made at these meetings.

¶ 41    Second, the standard for a public meeting is not whether any formal action was *taken*, but whether the meeting was "convened to *discuss* or undertake one of the actions enumerated in the remedy provision" of COML. *Costilla Cnty.*, 88 P.3d at 1194 (emphasis added); *see also Tallman v. Aune*, 2019 COA 12, ¶ 21, 446 P.3d 928, 932 (a court abuses its discretion when it applies the wrong legal standard). Considered under the correct standard, the court erred.

¶ 42    As noted, the county attorney testified that the purpose of the executive sessions was to communicate to other elected officials "what was going to happen . . . on the 25th," when the BOCC

passed the resolutions initiating the vote on the home rule charter.[2]

He testified that at the executive sessions, he answered "substantive" questions from attendees about the home rule charter. His twenty-slide PowerPoint presentation included information about what a home rule county is, the advantages and disadvantages of Douglas County becoming one, the process by which a home rule charter is established, and what Douglas County could do if the voters approved the proposed home rule charter. A witness also testified that attendees at the executive sessions "discussed who might be candidates that would be on the home rule committee."

---

[2] Notably, the county attorney testified that the BOCC voted to pass the home rule resolutions in a meeting that was "very brief, ten minutes [long], maybe," suggesting that that meeting merely "rubber-stamped" prior substantive discussions about the resolutions. *See Van Alstyne v. Hous. Auth.*, 985 P.2d 97, 101 (Colo. App. 1999) ("[A] public body's meeting is not in compliance with the Open Meetings Law if it is held merely to 'rubber stamp' previously decided issues."); *Anzalone v. Bd. of Trs.*, 2024 COA 18, ¶¶ 44-46, 549 P.3d 255, 264-65 (there was "no rational way to conclude" that the substance of a censure resolution had not been previously discussed and then "rubber stamp[ed]" where trustees unanimously approved it in a five-and-a-half-minute public meeting following an executive session).

¶ 43    Given this record evidence demonstrating that the executive sessions included extensive discussion about the home rule charter, we conclude that the executive sessions were subject to COML.

¶ 44    The court also found that though the BOCC did not "strictly adhere[]" to the statutory requirements for convening executive sessions at the three challenged meetings, there was no "convenient avenue" for the county attorney to do so.  Nevertheless, "local public bodies must strictly comply with COML's requirements for convening executive sessions." *Bjornsen,* ¶ 30, 487 P.3d at 1021-22 (a board of county commissioners violated COML by convening executive sessions without announcing the topic or noticing the session beforehand, even where doing so was "unavoidable" and "necessary"); *see also Guy v. Whitsitt,* 2020 COA 93, ¶¶ 4, 27, 469 P.3d 546, 548, 553 (town council violated COML by going into executive session to "discuss . . . legal advice" but not specifying the general subject matter of the legal advice to be discussed); *Roane,* ¶ 47, 555 P.3d at 80 (school district's failure to announce the general subject matter of legal advice it sought during executive session violated COML).  "If an executive session is not convened

properly, then the meeting and the recorded minutes are open to the public." *Gumina*, 119 P.3d at 531.

¶ 45 Accordingly, we conclude that the BOCC's failure (by its own admission) to strictly comply with the statutory requirements to convene an executive session violated COML.

¶ 46 Because we have determined that both the advanced planning meetings and the executive sessions were subject to COML, we additionally conclude that the trial court erred by finding that plaintiffs were not entitled to preliminary injunctive relief because they did not demonstrate a reasonable probability of success on the merits of the case, as required by *Rathke*.

## C. Remaining Rathke Factors

¶ 47 Plaintiffs also argue that the trial court erred by finding that they had not sufficiently demonstrated an injunction was warranted under the remaining five *Rathke* factors. The BOCC responds that the trial court correctly concluded plaintiffs did not demonstrate any evidence of real, immediate, and irreparable injury that may be prevented by injunctive relief or that an injunction would not disserve the public interest.

¶ 48     However, the BOCC misstates the trial court's findings. Although it is true that the court found plaintiffs had not "put on any evidence of a harm," that section of the order discusses only the potential of harm from the June 2025 special election. Similarly, in discussing whether an injunction would disserve the public interest, the trial court found only that plaintiffs "offered no evidence of how [the] public interest[] is better served *by delaying this Home Rule vote*." (Emphasis added.) Again, the trial court did not address whether the injunction against the BOCC continuing to employ meeting procedures that result in COML violations would likewise disserve the public interest.

¶ 49     In fact, although the trial court considered each *Rathke* factor with respect to plaintiffs' requested injunction against the home rule election, it made no findings as to whether plaintiffs demonstrated that an injunction against further violations of COML would be warranted.

¶ 50     By not making the required findings, the court erred. *See Joseph v. Equity Edge, LLC*, 192 P.3d 573, 577 (Colo. App. 2008) (trial court erred by failing to make findings as to all *Rathke* factors).

¶ 51    Because the circumstances regarding the other *Rathke* factors will have changed, on remand the trial court must reconsider its conclusions on the remaining *Rathke* factors and hold a further evidentiary hearing if necessary. The court must then make findings on the remaining factors and determine whether preliminary injunctive relief should be granted. *See id.*

## IV.    Appellate Attorney Fees

¶ 52    Plaintiffs request their appellate attorney fees under C.A.R. 39.1 and COML.

¶ 53    Section 24-6-402(9)(b) provides that "[i]n any action in which the court finds a violation" of COML, "the court shall award the citizen prevailing in such action costs and reasonable attorney fees." However, at this stage of the case, there is no prevailing party because there has been no final resolution on the merits. *DeJean v. Grosz*, 2015 COA 74, ¶ 45, 412 P.3d 733, 741; *see also Anderson v. Pursell*, 244 P.3d 1188, 1196 (Colo. 2010) (a preliminary injunction does not adjudicate the ultimate rights of the parties and is not determinative of the merits).

¶ 54    Accordingly, we decline to award appellate attorney fees.

## V.    Disposition

¶ 55    The order is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.  On remand, the court should hold a hearing to determine if the BOCC has continued to violate COML.  The court must also make findings on the remaining *Rathke* factors.

JUDGE MOULTRIE and JUDGE BERNARD concur.