The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 17, 2019

**2019COA158**

**No. 18CA2088, *Peoples v. ICAO* — Workers' Compensation — Benefits — Recovery of Overpayments**

In this workers' compensation case, the division considers whether an employer's listing of an overpayment on a final admission of liability constitutes an "attempt to recover" the overpayment under the Workers' Compensation Act of Colorado, section 8-42-113.5(1)(b.5)(I), C.R.S. 2019. The division concludes that when a claimant's temporary total disability and permanent partial disability benefits exceed the statutory cap, an employer's listing of an overpayment on a final admission of liability does not constitute an "attempt to recover" the overpayment.

COLORADO COURT OF APPEALS                    **2019COA158**

Court of Appeals No. 18CA2088
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-819-262

Carold Peoples,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and State of Colorado
Department of Transportation,

Respondents.

ORDER SET ASIDE AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE FURMAN
Webb and Brown, JJ., concur

Announced October 17, 2019

Irwin Fraley, PLLC, Roger Fraley, Jr., Centennial, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Ritsema & Lyon, P.C., Nancy C. Hummel, David R. Bennett, Denver, Colorado,
for Respondent State of Colorado Department of Transportation

¶ 1　　In a workers' compensation case, after an employer files a final admission of liability (FAL) and learns of an overpayment, the Workers' Compensation Act of Colorado (Act), section 8-42-113.5(1)(b.5)(I), C.R.S. 2019, requires the employer to "attempt to recover" that overpayment from a claimant within one year of learning of its existence.  (We will refer to section 8-42-113.5(1)(b.5)(I) as the statute of limitations.)

¶ 2　　This workers' compensation case asks us to determine whether an employer's listing of an overpayment on the FAL satisfies the "attempt to recover" term of the statute of limitations when a claimant's temporary total disability (TTD) and permanent partial disability (PPD) benefits exceed the statutory cap.  *See* § 8-42-107.5, C.R.S. 2019 (capping a claimant's combined TTD payments and PPD payments).  We conclude it does not because, in this circumstance, the claimant did not receive ongoing benefits from which the employer could recoup an overpayment.  *Id.*; § 8-42-113.5(1)(a), (c).

I.  Claimant's Work-Related Injuries

¶ 3　　Claimant, Carold Peoples, sustained admitted work-related injuries in February 2010.  Employer, State of Colorado Department

1

of Transportation (CDOT), began paying claimant TTD benefits in March 2010. When claimant reached maximum medical improvement (MMI) in April 2013, his TTD payments totaled $83,569.36. The parties agree this amount exceeded the applicable statutory cap on benefits of $75,000, as set by section 8-42-107.5.

¶ 4     In May 2012, the Social Security Administration determined that claimant qualified as disabled under its provisions and awarded him a monthly sum of social security disability benefits (SSDI). Claimant received a lump sum payment of $13,938.75 for "money . . . due for September 2010 through April 2012," and thereafter would receive $954 monthly. As required by section 8-42-113.5(1)(a), on May 30, 2012, claimant promptly and timely advised CDOT of his SSDI award.

¶ 5     According to claimant's counsel, after claimant notified CDOT of the SSDI award, CDOT revised its general admission of liability to reflect an overpayment and began taking a $78 deduction from claimant's ongoing TTD payments. This was consistent with the Act, which mandates that SSDI benefits first be deducted from workers' compensation disability benefits. § 8-42-113.5(1)(a).

¶ 6     In April 2013, after claimant reached MMI, CDOT filed a FAL (2013 FAL), which included a calculated overpayment of $17,632.79.  This calculation reflected the offsets.  But because claimant's TTD benefits ended at MMI, and his benefits had already exceeded the statutory maximum award for combined TTD and PPD benefits set by section 8-42-107.5, he would receive no ongoing benefits.  Consequently, CDOT could not deduct the overpayment from future disability payments because there would be none.  And, although CDOT could have sought an order for repayment under section 8-42-113.5(1)(c), it did not do so at that time or within the following year.  Because neither party sought a hearing, the FAL automatically closed.

¶ 7     The parties agree that the case was reopened approximately four years later so claimant could receive needed surgery.  In November 2017, CDOT filed an amended FAL modifying claimant's scheduled permanent impairment and noted its payment of $4000 for disfigurement.  CDOT again listed the overpayment of $17,632.79 it had included in its 2013 FAL.

¶ 8    Soon after, claimant applied for a hearing, seeking an

additional disfigurement award for scars left by his most-recent

surgery.  He also endorsed the following issue:

> Respondents [CDOT and its third-party
> administrator, Broadspire] have alleged a right
> to recover the $17,632.79 overpayment thay
> [sic] claim exists.  They might have a right to
> claim overpayment but they do not have a
> right to recover it as the exact same amount of
> claimed overpayment was on the 4/16/13 FAL
> and Sec. 8-42-113.5(1)(b.5)(I) sets a one year
> limit on recovering such overpayments which
> lapsed over three years ago.

In its response to the application for hearing, CDOT framed the

issue as, "[w]hether contesting overpayment is ripe since claimant

did not dispute overpayment in prior [FAL], credit for any

disfigurement award against overpayment, credit for previously paid

disfigurement, attorney fees."

¶ 9    The matter proceeded to a hearing.  Before the hearing, the

parties stipulated that the overpayment totaled $17,632.79.  The

presiding administrative law judge (ALJ) rejected CDOT's ripeness

contention but ruled that CDOT, by including the claimed

overpayment in its 2013 FAL, satisfied the statutory requirement to

assert an attempt to recover the overpayment within one year of

4

discovering it.  Thus, the ALJ rejected claimant's contention that the statute of limitations had expired.

¶ 10     The ALJ awarded claimant $2175 for disfigurement, which he then credited against the overpayment.  The ALJ also ordered claimant to repay the recalculated remaining overpayment of $15,257.79 to CDOT "at the rate of $50.00 per week/$200.00 per month."

¶ 11     On review to the Industrial Claim Appeals Office (Panel), claimant contended that (1) recovery of the overpayment was not properly before the ALJ; (2) the ALJ misinterpreted the statute of limitations; and (3) his disfigurement award should not have been credited against the overpayment.  The Panel rejected all three arguments, determining that, based on the record, recovery of the overpayment was an issue before the ALJ, CDOT was not barred from recovering the overpayment because filing either a FAL or an application for hearing to seek an order for repayment satisfied the statute of limitations, and the ALJ therefore properly deducted claimant's disfigurement award from the total overpayment.

¶ 12     On appeal, claimant mounts the same three challenges as he did to the Panel.  Because we conclude that the statute of

limitations barred CDOT from recovering the overpayment, we set aside the Panel's determination.

## II. Statute of Limitations Applicable to Overpayment

¶ 13    The Panel interpreted the statute's "attempt to recover" provision broadly to require nothing more than CDOT setting forth the overpayment amount on the 2013 FAL.

¶ 14    Claimant takes issue with the Panel's interpretation. He points to the uniqueness of this case, contending that his TTD and PPD benefits exceeded the then-applicable statutory cap of $75,000. As he explains, because his benefits exceeded the statutory cap by 2013, he could receive no more TTD or PPD benefits. In turn, CDOT could not deduct installments from future PPD benefits payments to repay the overpayment because there were no anticipated future PPD benefits. Instead, CDOT could have recovered the overpayment at that time, only if it had sought an order of repayment and an ALJ had entered such order. *See* § 8-42-113.5(1)(c). Thus, claimant reasons, merely listing the overpayment on the 2013 FAL did not satisfy CDOT's burden to "attempt to recover" the overpayment and the statute of limitations expired on May 30, 2013, one year from when he informed CDOT of

6

the overpayment. So, claimant contends, the statute of limitations barred CDOT from seeking recovery of the overpayment in 2017.

¶ 15    We agree with claimant.

A. Applicable Statutory Provisions

¶ 16    We begin with the statutory provisions relevant to our analysis:

> (1) If a claimant has received an award for the payment of disability benefits or a death benefit under articles 40 to 47 of this title and also receives any payment, award, or entitlement to benefits under the federal old-age, survivors, and disability insurance act, an employer-paid retirement benefit plan, or any other plan, program, or source for which the original disability benefits or death benefit is required to be reduced pursuant to said articles, but which were not reflected in the calculation of such disability benefits or death benefit:
>
> (a) Within twenty calendar days after learning of such payment, award, or entitlement, the claimant . . . shall give written notice of the payment, award, or entitlement to the employer or . . . to the employer's insurer. If the claimant or legal representative gives such notice, any overpayment that resulted from the failure to make the appropriate reduction in the original calculation of such disability benefits or death benefit shall be recovered by the employer or insurer in installments at the same rate as, or a lower rate than, the rate at which the overpayments were made. Such

7

recovery shall reduce the disability benefits or death benefit payable after all other applicable reductions have been made.

. . . .

(b.5)(I) After the filing of a final admission of liability, except in cases of fraud, any attempt to recover an overpayment shall be asserted within one year after the time the requester knew of the existence of the overpayment.

. . . .

(c) If for any reason recovery of overpayments as contemplated in paragraph (a) or (b) of this subsection (1) is not practicable, the employer or insurer is authorized to seek an order for repayment.

§ 8-42-113.5(1)(a), (b.5)(I), (c).

¶ 17    This statute gives injured workers twenty days to notify their employer or their employer's insurer about any other sources of benefits, such as SSDI. *See* § 8-42-113.5(1)(a). The provision mandates that the employer or insurer then deduct installment payments toward the overpayment from the injured worker's disability benefit. *See id.* ("[S]uch disability benefits . . . shall be recovered by the employer or insurer in installments at the same rate as, or a lower rate than, the rate at which the overpayments were made.").

8

¶ 18    If recouping an overpayment by deducting from future benefits is not "practicable," an employer or insurer "is authorized to seek an order for repayment." § 8-42-113.5(1)(c). And, the employer or insurer must "assert[]" an "attempt to recover the overpayment" within one year of learning of its entitlement to an overpayment. § 8-42-113.5(1)(b.5)(I).

¶ 19    When it filed its 2013 FAL, CDOT had no means of deducting any remaining overpayment from claimant's future PPD benefits because claimant would be receiving no such benefits. His TTD benefits exceeded the statutory cap, foreclosing his entitlement to future PPD benefits. Thus, it was not practicable for CDOT to follow the offset procedure contemplated by section 8-42-113.5(1)(a). The parties agree, though, that CDOT could have sought an order for repayment as authorized by section 8-42-113.5(1)(c) but did not do so in 2013.

¶ 20    We must now determine whether the Act barred CDOT from seeking an order of repayment in 2017 because it chose not to do so in 2013. We conclude it did.

    B.  Rules of Statutory Construction and Standard of Review

9

¶ 21    We review statutory construction de novo.  *Ray v. Indus. Claim Appeals Office*, 124 P.3d 891, 893 (Colo. App. 2005), *aff'd*, 145 P.3d 661 (Colo. 2006).

¶ 22    If its language is clear, we interpret the Act "according to its plain and ordinary meaning."  *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004).  And, "when examining a statute's language, we give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'"  *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005)).

¶ 23    Although we may give deference to the Panel's reasonable interpretations of the statute it administers, *Sanco Indus. v. Stefanski*, 147 P.3d 5, 8 (Colo. 2006), we are "not bound by the Panel's interpretation" or its earlier decisions, *United Airlines v. Indus. Claim Appeals Office*, 2013 COA 48, ¶ 7; *Olivas-Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo. App. 2006).  But "the Panel's interpretation will be set aside only if it is inconsistent

10

with the clear language of the statute or with the legislative intent."

*Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175

(Colo. App. 1998).

### C. Scope of "Attempt to Recover" Under Section 8-42-113.5(1)(b.5)(I)

¶ 24    Relying on one of its earlier decisions, the Panel determined

that CDOT's filing of the 2013 FAL, in which it listed the

overpayment amount, constituted a satisfactory "attempt to

recover" the overpayment under the statute of limitations. In this

earlier decision, the Panel had rejected the employer's contention

that its "informal" attempts to recover an overpayment — primarily

letters to opposing counsel demanding payment — satisfied the

statute of limitations. Through informal correspondence, the

employer "recommended that the insurer receive $50 a week from

[PPD] benefits to recover the overpayment." *Maez v. Adelphia*

*Commc'ns Corp.*, W.C. No. 4-609-410, 2011 WL 308226, at *1 (Colo.

I.C.A.O. Jan. 25, 2011). The Panel determined this correspondence

did not constitute an attempt to recover within the statute of

limitations. Rather, the Panel determined the employer should have

"either file[d] a [FAL]" listing the overpayment or sought "an order to

11

recover the overpayment" to preserve its right to recover the overpayment. *Id.* at *3.

¶ 25    Following the reasoning in *Maez,* the Panel here determined that employer's listing of the overpayment in its 2013 FAL satisfied the statute. The Panel noted that section 8-42-113.5(1)(b.5)(I) broadly states that "*any* attempt to recover" (emphasis added) an overpayment within one year of learning of its existence satisfies the statute of limitations; therefore, the Panel reasoned, CDOT's 2013 FAL, which first identified the overpayment, fulfilled its statutory obligation. We disagree. Neither *Maez* nor the statute's plain language mandate this outcome.

¶ 26    The *Maez* employer did not learn of the overpayment until after it had filed its first FAL. And, because the *Maez* claimant still could receive disability benefits, the *Maez* employer could recover the overpayment by reducing payments of ongoing disability benefits. Thus, the *Maez* employer could have filed a revised FAL within the statute of limitations that claimed specific offset against future benefits to which the claimant was entitled, and that would have constituted an "attempt to recover." Not so, here. CDOT knew about claimant's SSDI benefits well before it filed its 2013 FAL but

could not recover the overpayments by deducting payments from ongoing disability benefits — because claimant could receive no more TTD or PPD benefits.

¶ 27 Turning to the statutory language, we also conclude that section 8-42-113.5(1)(b.5) does not support the Panel's interpretation in this circumstance. *See Support, Inc.,* 968 P.2d at 175. The Act does not define "attempt." But, a common meaning of this term includes "to make an effort to" accomplish an end. Merriam-Webster Dictionary, https://perma.cc/57Q3-QMUL. And, attempt does not include merely asserting an overpayment because "attempt" modifies "to recover." *See* § 8-42-113.5(1)(b.5)(I). "Recover" is defined as "to get back" or "to gain by legal process." Merriam-Webster Dictionary, https://perma.cc/S5NT-DF2C. Thus, the term "attempt" in section 8-42-113.5(1)(b.5)(I) cannot be a mere assertion of an overpayment; it must include some effort to regain the overpayment. CDOT did not make such an effort to regain the overpayment when it learned of the overpayment. Rather, the 2013 FAL simply provided notice to claimant that an overpayment existed.

¶ 28   For these reasons, we agree with claimant that the 2013 FAL, which merely declared the amount of the overpayment, did not satisfy the statute of limitations.

¶ 29   And, if the statute of limitations can be satisfied simply by asserting the overpayment in a FAL when no means to deduct installments are available, rather than making an effort to recover the overpayment, what is to prevent an employer from stopping the statute of limitations clock with a FAL, waiting an unconscionable length of time, and then, much later, filing an application for hearing seeking an order for repayment?  We do not believe the legislature intended to create a loophole through which employers can extend the statute of limitations indefinitely.  Such an outcome would be contrary to the legislature's intent of limiting employers' right to collect repayment of an overpayment to within one year of learning of the overpayment.  § 8-42-113.5(b.5)(I).

¶ 30   Such a result also runs counter to the Act's stated goal of assuring "the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers."  § 8-40-102(1), C.R.S. 2019.  The closure of claims advances this goal. But allowing an employer to extend the deadline to seek repayment

of overpayments solely by listing the overpayment in a FAL when no means to deduct installments are available, which can occur under the Panel's interpretation, thwarts the goal of closure. *See Olivas-Soto,* 143 P.3d at 1179 (The statute that provides for automatic closure of claims thirty days after filing of a FAL "is part of a statutory scheme designed to promote, encourage, and ensure prompt payment of compensation to an injured worker without the necessity of a formal administrative determination in cases not presenting a legitimate controversy.").

¶ 31    We therefore conclude that, where, as here, an employer cannot offset its overpayment by deducting from ongoing disability payments, an employer must seek an ALJ's order of repayment within one year of learning of its entitlement to an overpayment. § 8-42-113.5(1)(b.5).  So, we also conclude that the Panel and the ALJ erred by determining that CDOT had satisfied this statute when it filed its 2013 FAL listing the overpayment.

### D.  CDOT Was Not Entitled to Recoup the Overpayment

¶ 32    After it filed its 2013 FAL, CDOT should have made an "attempt to recover [the] overpayment" within one year of learning of the overpayment.  § 8-42-113.5(1)(b.5)(I).  Because it did not pursue

15

a course of action that could lead to recovery of the overpayment — relying instead on the mere uncollectable identification of the overpayment in the FAL — the statute of limitations expired. Consequently, CDOT was barred from seeking recovery of the overpayment. The Panel therefore erred when it affirmed the ALJ's order of repayment and credit against claimant's disfigurement award.

### III. Recovery of the Overpayment Was Properly Before the ALJ

¶ 33 Having determined that CDOT was time barred from seeking repayment of the overpayment, we need not address claimant's contention that repayment had not been endorsed properly or timely.

### IV. Conclusion

¶ 34 We set aside the Panel's order and remand the case for issuance of a new order in accordance with this opinion.

JUDGE WEBB and JUDGE BROWN concur.