The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 11, 2020

**2020COA93**

**No. 19CA0125, *Guy, T v. Whitsitt* — Administrative Law — Colorado Sunshine Act — Open Meetings Law**

Under a provision in the Colorado Open Meetings Law, sections 24-6-401 to -402, C.R.S. 2019, a local public body may meet in closed, executive session if, among other things, it identifies for the public the "particular matter[s]" upon which it is to meet "in as much detail as possible without compromising the purpose for which the executive session is authorized," § 24-6-402(3)(a).

In this case, a division of the court of appeals considers whether the Town Council of Basalt complied with this provision by notifying the public only (1) that during executive session it would discuss "legal advice" and "personnel matters," § 24-6-402(4)(f)(I); and (2) of its statutory authority to discuss such matters.

The division concludes that the Town Council did not comply with the provision because it was possible to divulge some information about the subject of the legal advice or personnel matters discussed without compromising the purposes for which the executive sessions were called. The Town Council's failure to notify the public of any detail beyond mere recitation of a statutorily permitted topic violated the Colorado Open Meetings Law.

COLORADO COURT OF APPEALS      **2020COA93**

---

Court of Appeals No. 19CA0125
Eagle County District Court No. 16CV30322
Honorable Russell H. Granger, Judge

---

Theodore Guy,

Plaintiff-Appellant,

v.

Jacque Whitsitt, in her official capacity as a member of the Town Council and
Mayor of the Town of Basalt, Colorado; Town Council of the Town of Basalt,
Colorado, a home rule municipality; and Pam Schilling, in her official capacity
as the Town Clerk and the Records Custodian for the Public Records of the
Town of Basalt, Colorado,

Defendants-Appellees.

---

JUDGMENT REVERSED IN PART, APPEAL DISMISSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

DIVISION I
Opinion by JUDGE DAILEY
Harris and Johnson, JJ., concur

Announced June 11, 2020

---

Azizpour Donnelly, LLC, Katayoun A. Donnelly, Denver, Colorado; Killmer,
Lane & Newman, LLP, Thomas D. Kelley, Denver, Colorado; Ballard Spahr,
LLP, Steven D. Zansberg, Denver, Colorado, for Plaintiff-Appellant

Law Office of Steven J. Dawes, LLC, Steven J. Dawes, Denver, Colorado, for
Defendants-Appellees

¶ 1    In this action to enforce the Colorado Open Meetings Law (COML), sections 24-6-401 to -402, C.R.S. 2019, plaintiff, Theodore Guy, appeals that part of the district court's judgment entered in favor of defendants, Jacque Whitsett, in her official capacity as a member of the Town Council and Mayor of the Town of Basalt; the Town Council of the Town of Basalt, Colorado, a home rule municipality; and Pam Schilling, in her official capacity as Town Clerk and Records Custodian for the public records of the Town of Basalt, Colorado (collectively, the Town Council). Guy also appeals the district court's order on attorney fees.

¶ 2    We reverse the judgment in part, dismiss part of the appeal, and remand for further proceedings.

## I.    *Background*

¶ 3    During four public meetings in 2016, the Town Council went into executive session to discuss a combination of four statutorily permissible topics: (1) the purchase, acquisition, lease, transfer, or sale of property interests (property interests); (2) receiving legal advice on specific legal questions (legal advice); (3) determining positions relative to matters that are or may become subject to

negotiations (negotiations); and (4) personnel matters. *See* § 24-6-402(4)(a), (b), (e), (f), C.R.S. 2019.

¶ 4    In its public announcement of what would be discussed in executive session, the Town Council mentioned only that it would discuss property interests, legal advice, negotiations, and personnel matters, and cited the statutory provisions related thereto. No information was provided about what property interests, legal advice, negotiations, or personnel matters would be discussed.[1]

¶ 5    Guy (1) asserted, in a letter, that under COML the Town Council had to identify with some degree of particularity the matters to be discussed in executive sessions and (2) requested, under Colorado's Open Records Act (CORA), sections 24-72-201

---

[1] For example, for one of the announced executive sessions, the Town Council meeting agenda stated verbatim:

1. The purchase, acquisition, lease, transfer or sale of property interests in accordance with C.R.S. 24-6-402(4)(a).
2. A conference with the Town's attorney for the purpose of receiving legal advice on specific legal questions in accordance with C.R.S. 24-6-402(4)(b);
3. Determining positions relative to matters that are or may become subject to negotiations in accordance with C.R.S. 24-6-402(4)(e).
4. Personnel matters in accordance with C.R.S. 24-6-402(4)(f).

to -206, C.R.S. 2019, records of the executive sessions. The Town Council disagreed with Guy's assertion and denied Guy's requests for records either because no records existed, or, if they did, the records were "confidential, privileged, not a public record, and not subject to disclosure."

¶ 6    Guy instituted the present action by filing a combined (1) application for an order under section 24-72-204(5)(a), C.R.S. 2019, requiring the Town Council to show cause why records of the four executive sessions should not be disclosed; and (2) a complaint under section 24-6-402(8) for, as pertinent here, a declaration that the Town Council had violated COML's notice requirement with respect to all four executive sessions. In his pleadings, Guy alleged that the Town Council had failed to identify, as required by section 24-6-402(4), "particular matters in as much detail as possible without compromising the purpose for which the executive session is authorized . . . ."

¶ 7    At a show cause hearing, the Town Council's attorney confirmed that, in announcing executive sessions, the Town Council's practice was to recite only the statutorily permissible purposes for such sessions and "nothing more."

3

¶ 8    The Town Council's attorney also testified that a "form" used by the custodian to announce the executive sessions contains a blank space to write in details regarding the "particular matter to be discussed."[2]  For the four executive sessions at issue in this case, the space in the form was left blank.

¶ 9    Following the hearing, the district court issued a written order. In that order, the district court determined that (1) from its review of the executive sessions' recordings, no impermissible topics were discussed; (2) pursuant to section 24-6-402(d.5)(II)(B), those parts of the sessions pertaining to legal advice were not recorded; (3) the "personnel matters" discussed during those sessions concerned the Town's then-acting Town Manager, Michael Scanlon;[3] (4) section 24-6-402(4) had to be interpreted as applying a "reasonableness

---

[2] The line on the form says, "2. The particular matter to be discussed is _____.'"

[3] Scanlon intervened in the case and filed an affidavit (1) asserting a "privacy interest" in the records of the personnel matters discussed during the executive sessions and (2) not consenting to the release of any of those records "that include discussion or reference to of [sic] any of the following related to me: employment information; educational information; performance evaluations; reasons for separation; medical information; background check information; personal history; financial information; or disciplinary records."

4

standard" in identifying "particular matters *in as much detail as possible*" (emphasis added), because hindsight "could always find some 'possible' way to further identify [a] particular matter"; (5) there were no "special circumstances that prohibited the Town [Council] from making a more detailed description" of the "negotiations" and "property issues" (that is, there were no "specific market concerns or other matters that would reasonably prevent the Town [Council] from at least identifying what the property and negotiations were"); but (6) the Town Council did not have to provide any detail in announcing that "legal advice" and "personnel matters" would be discussed in executive session because of the nature of the attorney-client privilege and Scanlon's privacy interests.[4]

¶ 10    Guy now appeals.

---

[4] Subsequently, the district court ruled in Guy's favor on a claim that he was entitled under Colorado's Open Records Act, sections 24-72-201 to -206, C.R.S. 2019, to have access to specific text messages and emails between Town Council members about Town business.  Because Guy succeeded on this claim, however, it is not a subject of this appeal.

## II.    *The Town Council Did Not Comply with the COML*

¶ 11    Guy contends that the district court erred in ruling that the Town Council did not have to announce any "particular matter to be discussed" in executive session beyond merely mentioning the statutorily permissible topics of legal advice and personnel matters. We agree.

¶ 12    In analyzing the issue before us, we are not called on to review any findings of fact by the district court because the material facts in this case are undisputed. Instead, we are called on to review the district court's application of the COML, which involves a question of law subject to de novo review. *Ledroit Law v. Kim*, 2015 COA 114, ¶ 47.

¶ 13    Section 24-6-402 provides that, generally speaking, meetings of public officials to discuss or take formal action on public business must be open to the public. § 24-6-402(1), (2). It does, however, allow "members of a local public body" to discuss several topics (or "matters") in executive session closed to the public:

> The members of a local public body subject to this part 4, *upon the announcement by the local public body to the public of the topic for discussion in the executive session*, including specific citation to this subsection (4)

> authorizing the body to meet in an executive session and *identification of the particular matter to be discussed in as much detail as possible without compromising the purpose for which the executive session is authorized,* and the affirmative vote of two-thirds of the quorum present, after such announcement, may hold an executive session only at a regular or special meeting and for the sole purpose of considering any of the following matters . . . : [listing a number of topics].

§ 24-6-402(4) (emphases added).[5]

¶ 14    The issue in this case is whether, by merely mentioning the "particular matter[s]" of legal advice and personnel matters, accompanied by references to their respective statutory provisions, the Town Council complied with the statutory directive to identify "particular matter[s]" "in as much detail as possible without compromising the purpose for which the executive session is authorized." *Id.*[6]

---

[5] Strict adherence to the procedure is important because "[i]f an executive session is not convened properly, then the meeting and the recorded minutes are open to the public." *Gumina v. City of Sterling,* 119 P.3d 527, 531 (Colo. App. 2004).

[6] This portion of the statute was added in 2001, *see* Ch. 286, sec. 2, § 24-6-402, 2001 Colo. Sess. Laws 1072-73, presumably to address a need for further explanation of the purposes for which executive sessions are convened. *See, e.g., Estate of Brookoff v. Clark,* 2018

7

¶ 15    In effect, the district court construed section 24-6-402(4) to require identification of a "particular matter" "in as much detail as *reasonably* possible without compromising the purpose for which the executive session is authorized."

¶ 16    We need not decide whether the district court erred in interpreting the statute in this manner.  Guy does not attack the sufficiency of information provided so much as he does the Town Council's *failure to provide any information* beyond the mere mention of generic statutory categories of legal advice and personnel matters.

¶ 17    As we read the court's order, it upheld the Town Council's bare-bones notice for legal advice and personnel matters because, in its view, the very nature of the topics precluded the disclosure of any more information.  That is, divulging any more information about those topics would (in the language of the statute)

CO 80, ¶ 6 ("When we interpret a statute that has been amended, we presume the statutory amendment reflects the legislature's intent to change the law."); *Peoples v. Indus. Claim Appeals Office,* 2019 COA 158, ¶ 23 ("[W]e do not presume that the legislature used language idly . . . ." (quoting *Lombard v. Colo. Outdoor Educ. Ctr., Inc.,* 187 P.3d 565, 571 (Colo. 2008))).

"compromis[e] the purpose[s] for which the executive session [was] authorized." § 24-6-402(3).

¶ 18    In our view, the district court misapplied the statute. We address separately each of the subjects upon which the court found no further information was necessary to provide to the public.

*A.    Legal Advice*

¶ 19    As previously noted, the district court determined that the Town Council did not need to divulge any information besides announcing that an executive session has been called to discuss legal advice. The court reached that determination after considering the purposes served by, and the scope of, the attorney-client privilege. It is the court's perceived scope of the privilege that, in our view, lies at the heart of the court's ruling: because "[t]he attorney-client privilege may extend to the subject matter itself as well as to the details," "further information was not required[.]"[7]

_____

[7] The court reasoned that because the attorney-client privilege can be waived by the voluntary disclosure of information to a third party, "providing additional detail about those confidential discussions [in executive session] carried the risk of an assertion that confidentiality had been waived."

¶ 20    The district court was mistaken.  The common law attorney-client privilege codified at section 13-90-107(1)(b), C.R.S. 2019, "extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations," *Law Offices of Bernard D. Morley, P.C. v. MacFarlane*, 647 P.2d 1215, 1220 (Colo. 1982).  It "does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to [or with] his attorney[.]" *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000); *id.* at 1124 (The attorney-client privilege does not "encompass otherwise unprivileged facts disclosed in attorney-client relations, and unprivileged facts cannot become privileged merely by incorporation into a communication with an attorney.").

¶ 21    Of more significance here, the privilege ordinarily does not encompass information about the subject matter of an attorney-client communication:

> [m]erely disclosing the fact that there were communications or that certain subjects were discussed, however, does not constitute a . . . disclosure [waiving the privilege].  The disclosure must be of confidential portions of the privileged communications.  This does not include the fact of the communication, the

> identity of the attorney, the subject discussed, and details of the meetings, which are not protected by the privilege.

*Roberts v. Legacy Meridian Park Hosp. Inc.*, 97 F. Supp. 3d 1245, 1252-53 (D. Or. 2015) (quoting 2 Paul R. Rice, *Attorney-Client Privilege in the United States* § 9:30 at 153-56 (2014)); *see also United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986) ("[A] client does not waive his attorney-client privilege 'merely by disclosing a subject which he had discussed with his attorney'. In order to waive the privilege, the client must disclose the communication with the attorney itself.") (citation omitted); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 17 C 1973, 2019 WL 2774126, at *2 (N.D. Ill. July 2, 2019) (unpublished opinion) ("Courts have consistently held that the facts surrounding attorney-client communications, including the fact that they occurred, their dates, topics and subject matter are discoverable and not privileged."); *GFI Secs. LLC v. Labandeira*, No. 01 CIV. 00793, 2002 WL 460059, at *7 (S.D.N.Y. Mar. 26, 2002) (unpublished opinion) ("The attorney-client privilege is not waived if merely the fact of the communication is disclosed, the substance of the communication is not at issue, and there is no prejudice to the

opposing party. The substance of privileged communications is protected while the fact that they may have occurred is not."); *C.J. Calamia Constr. Co. v. Ardco/Traverse Lift Co.*, No. CIV.A. 97-2770, 1998 WL 395130, at *3 (E.D. La. July 14, 1998) (unpublished opinion) ("[T]he attorney-client privilege attaches to the substance of the communications exchanged; mere inquiry into the subject matter of the communications is not precluded."). *But see United States v. Aronoff*, 466 F. Supp. 855, 861 (S.D.N.Y. 1979) ("[T]he privilege ordinarily protects a client from having to disclose even the subject matter of his confidential communications with his attorney.").

¶ 22    That the subject matter of an attorney-client communication is ordinarily not privileged information is evident from, among other things, how it is treated under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(B) (2018), the federal counterpart of CORA.[8]

---

[8] Though not identical, CORA and FOIA share the same purpose. "[T]hough our statutory language differs, the intent is the same: an agency cannot improperly withhold agency records, and if it does so, the courts are empowered to remedy the situation." *Wick Commc'ns Co. v. Montrose Cty. Bd. of Cty. Comm'rs*, 81 P.3d 360,

¶ 23    FOIA and CORA exempt from public disclosure matters

encompassed in a number of evidentiary privileges, including as

pertinent here, the attorney-client privilege.  *City of Colorado*

*Springs v. White*, 967 P.2d 1042, 1056 (Colo. 1998); *see also* § 24-

72-204(1)(a) (recognizing records are not authorized for disclosure if

"such inspection would be contrary to any state statute" and the

attorney-client privilege is codified in state statute).

¶ 24    Under FOIA, when a public entity wishes to prevent the

disclosure of requested public records, the public entity "must

submit an affidavit 'identifying the documents withheld, the FOIA

exemptions claimed, and a particularized explanation of why each

document falls within the claimed exemption.'"  *Burton v. Wolf*, 803

F. App'x 120, 122 (9th Cir. 2020) (quoting *Lahr v. Nat'l Transp.*

*Safety Bd.*, 569 F.3d 964, 989 (9th Cir. 2009)).  The affidavit is

called a *Vaughn* index, named for the decision which first imposed

---

363 (Colo. 2003) (adopting for CORA the test from FOIA whether the
public entity improperly withheld a public record, because FOIA is
consistent with CORA's goals).

13

the requirement. *See Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973).[9]

¶ 25    A *Vaughn* index (1) requires, among other things, a specific and detailed assertion of a privilege, although the index need not be so detailed that it compromises the purposes served by the privilege;[10] and (2) should provide a specific description of each document claimed to be privileged where, typically, the description should provide each document's author, recipient, and subject matter. *White*, 967 P.2d at 1053-54; *cf. Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 369 (4th Cir. 2009) ("Without revealing any facts about the documents' contents, the Agencies have merely asserted their conclusion that the document is exempt, employing general language associated with the deliberative process privilege."); *Campaign for Responsible Transplantation v. U.S. Food &*

---

[9] "A *Vaughn* index is the FOIA equivalent of a [C.R.C.P. 26(b)(5)(A) litigation] privilege log." *Rocky Mountain Wild v. U.S. Bureau of Land Mgmt.*, No. 18-CV-0314-WJM-STV, 2020 WL 1333087, at *6 (D. Colo. Mar. 23, 2020).

[10] This requirement is substantially identical to the COML, which requires a description of the particular matter "in as much detail as possible without compromising the purpose for which the executive session is authorized." § 24-6-402(3)(a), C.R.S. 2019.

*Drug Admin.*, 219 F. Supp. 2d 106, 112 (D.D.C. 2002) (Short descriptions that "only provide a vague hint at the possible contents," such as "Internal Memo RE: Xeno," are insufficient.).

¶ 26    A proper *Vaughn* index regarding attorney-client privilege typically includes the author's name, the recipient's name, and some description of the topic. *See, e.g., Leopold v. U.S. Dep't of Justice,* 411 F. Supp. 3d 1094, 1104 (C.D. Cal. 2019) (for emails sent to receive legal advice, disclosure of subject and participants and relating to testimony given by specific Federal Bureau of Investigation employees before congressional committees for distinct purposes is sufficient); *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.,* 138 F. Supp. 3d 1216, 1224-25 (D. Colo. 2015) (Descriptions such as "legal sufficiency review," "confidential factual and legal information," and "legal and policy advice" are "conclusory statements which do nothing more than recite the legal standard [and] fail to demonstrate a logical basis" for the claim of attorney-client privilege and "fail to provide sufficient detail[.]"); *All. of Californians for Cmty. Empowerment v. Fed. Hous. Fin. Agency,* No. 13-CV-05618, 2014 WL 12567153, at *1 (N.D. Cal. Sept. 4, 2014) (remanding for the party to supply an adequate *Vaughn* index

15

and "sufficiently detailed declarations" where the index contained entries that merely recite the elements of a claimed exemption, i.e., "[t]his document is being withheld in its entirety pursuant to exemption (b)(5), containing deliberative process and attorney-client material"); *Carter, Fullerton & Hayes LLC v. Fed. Trade Comm'n*, 520 F. Supp. 2d 134, 142 (D.D.C. 2007) (describing "Internal memo between staff attorneys of OPP deliberating/discussing whether to make recommendations to the Commission concerning the filing of an *amicus* brief" was appropriate).

¶ 27    Based on the reasoning in the above-mentioned authorities, we conclude that (1) it was possible (even reasonably possible) to describe *at least* the "subject matter" of what was to be discussed without waiving the attorney-client privilege, and, consequently, (2) the Town Council's failure to provide any information beyond the statutory citation authorizing an executive session for "legal advice" did not comply with the statutory requirement of identifying "a particular matter in as much detail as possible without

compromising the purpose for which an executive session was called."[11] The district court erred in concluding otherwise. [12]

## B. Personnel Matters

¶ 28    The district court determined that the Town Council could not identify with any more particularity the personnel matters to be discussed during the executive sessions because of the privacy interests of the Town Manager (Scanlon):

---

[11] Indeed, as Guy points out in his opening brief, the Town Council subsequently started announcing the subjects of "legal advice" that would be discussed in executive session. *See, e.g.*, Basalt Town Council, *Special Meeting Minutes* 3 (Sept. 6, 2016), https://perma.cc/6AUD-AP7B (announcing that legal advice would concern "1) An August 25, 2016 Open Records Act request from Ted Guy and others; and 2) Mike Scanlon'[s] employment and his employment agreement"); Basalt Town Council, *Meeting Minutes* 4 (Oct. 18, 2016), https://perma.cc/CG6A-2SFQ (announcing that legal advice would concern "the Eagle County District Court Case Guy v. Whitsitt"). These are undisputed matters of public record, and, as such, we may take judicial notice of them. *See Peña v. Am. Family Mut. Ins. Co.*, 2018 COA 56, ¶ 14 (recognizing that a court may take judicial notice of public records).

[12] Our conclusion is based on the principle that "ordinarily" the subject matter of an attorney-client communication is not privileged information. To say that something is not "ordinarily' privileged, however, does not mean that it could never be privileged. We can conceive of extraordinary situations in which a colorable claim of privilege could be made regarding the very fact of a person's consultation with an attorney. This, however, is not one of them.

17

Had the Town Council given more detail about the purpose of the discussion of the "personnel matters", i.e., the performance or continued employment of Mr. Scanlon, the Town Council may have violated Mr. Scanlon's privacy rights and breached the terms of his Employment Agreement. Evidence was presented that Mr. Scanlon has asserted a claim of retaliation for a recent announcement of an executive session involving his current employment. Thus, a more specific identification of the purpose of the executive session to discuss Mr. Scanlon's performance or continued employment would not be reasonable or possible in accordance with the statute because it would have compromised the purpose of the executive session.

. . . .

[D]isclosing Mr. Scanlon's employment or performance of [sic] the subject of the executive session exposed the Town to the risk that Mr. Scanlon would contend that his right to privacy would be compromised and that it would be a violation of his Employment Agreement. . . .

In conclusion, this Court finds and rules that due to the specific facts in this case including the contractual provisions, Mr. Scanlon's objection to any public disclosure of his personnel issues, prior notice to Mr. Scanlon, and the identification that was provided, the provisions of COML were met and the executive sessions regarding Mr. Scanlon were properly convened. The Court also finds that given Mr. Scanlon's particular sensitivity and strong objections to any public disclosure, this

18

> Court's ruling would be the same even if there was not a contract between the Town and Mr. Scanlon.

¶ 29    We disagree with the conclusions reached by the district court. Driving our decision is the recognition that, as a public employee, Scanlon has a narrower expectation of privacy than other citizens, *Denver Publ'g Co. v. Univ. of Colo.*, 812 P.2d 682, 685 (Colo. App. 1990), and the public has an interest in knowing employee compensation, and, in certain instances, employee work performance. Indeed, CORA affords Scanlon only a narrow privacy interest regarding his employment, i.e., in his "personnel file." *See* § 24-72-204(3)(a)(II)(A) (denying, generally, the right of the public to access "personnel files").[13] It does not, however, protect from disclosure "any employment contract or any information regarding

---

[13] "'Personnel files' means and includes home addresses, telephone numbers, financial information, a disclosure of an intimate relationship filed in accordance with the policies of the general assembly, [and] other information maintained because of the employer-employee relationship . . . ." § 24-72-202(4.5), C.R.S. 2019. "[T]he general term of 'other information maintained because of the employer-employee relationship' only applies to those things which are of the same general kind or class as personal demographic information." *Jefferson Cty. Educ. Ass'n v. Jefferson Cty. Sch. Dist. R–1*, 2016 COA 10, ¶ 20.

amounts paid or benefits provided under any settlement agreement pursuant to the provisions of article 19 of this title," § 24-72-204(3)(a)(II)(B), or "applications of past or current employees, employment agreements, any amount paid or benefit provided incident to termination of employment, performance ratings, final sabbatical reports required under section 23-5-123, or any compensation, including expense allowances and benefits, paid to employees by the state, its agencies, institutions, or political subdivisions," § 24-72-202(4.5), C.R.S. 2019; *see also, e.g.,* *Jefferson Cty. Educ. Ass'n v. Jefferson Cty. Sch. Dist. R–1*, 2016 COA 10, ¶ 21 (holding that teachers' sick-leave records are not protected by CORA).

¶ 30    From these principles, it follows that Scanlon did not have a privacy interest in his employment contract or certain aspects, at least, of his conduct as a public employee with the Town. *See, e.g.,* *Denver Publ'g Co.*, 812 P.2d at 684 (A settlement agreement is not protected by CORA: "in light of the clear intent of the Open Records Act, it is unreasonable for the defendants to have assumed they could restrict access to the terms of employment between a public

institution and those it hires merely by placing such documents in a personnel file.").

¶ 31    Nonetheless, the Town Council asserts that, under the terms of its contract with Scanlon, the Town risked being sued if it provided the public any notice about anything related to Scanlon's employment.  The simple answer to this, however, is that the Town may not, by contract, evade its statutory obligations.  *Cf. Cummings v. Arapahoe Cty. Sheriff's Dep't*, 2018 COA 136, ¶ 43 (contracts that abrogate statutory requirements violate public policy and are unenforceable).  The Town's desire to limit its exposure to a possible legal action by Scanlon did not, in our view, justify negating the public's right to know the subject of what its officials would be discussing in secret.

¶ 32    For these reasons, we conclude that the Town's announcement should at least have notified the public that the personnel matters that would be discussed in executive session concerned Scanlon.  The court erred in concluding otherwise.

### *C.    Remedy*

¶ 33    Because the Town Council did not comply with COML's notice requirements, Guy is entitled to the recordings and minutes of the

executive session (to the extent they exist) involving the matters not properly noticed. *See Gumina v. City of Sterling*, 119 P.3d 527, 530 (Colo. App. 2004).

### III. Attorney Fees

¶ 34    Section 24-6-402(9)(b) says, "[i]n any action in which the court finds a violation of this section, the court shall award the citizen prevailing in such action costs and reasonable attorney fees." The district court said that it would award Guy a reasonable amount of attorney fees only for that part of the case on which he had prevailed. But the court never determined an amount of fees, waiting to do so, as the parties requested, until this appeal was concluded. Because no amount of attorney fees has yet been awarded, there is no "final" appealable order with respect thereto. *Williams v. Dep't of Pub. Safety*, 2015 COA 180, ¶ 114. Consequently, that part of Guy's appeal concerning the district court's attorney fees order is dismissed.[14]

---

[14] In any future proceeding, of course, Guy can point out to the district court that he has now prevailed on other aspects of his case as well.

22

¶ 35    Guy has also requested — and is entitled to — an award of appellate costs under C.A.R. 39 and attorney fees under C.A.R. 39.1 and section 24-6-402(9)(b).[15]  We therefore remand the case to the district court to award Guy his costs and a reasonable amount of attorney fees incurred on appeal.

## IV.    Reassignment to a Different Judge

¶ 36    Finally, we note that Guy requests that we order further proceedings in this case be conducted by a different judge because the judge here purportedly "repeatedly evinced its disdain for citizens, like Mr. Guy, who invoke the courts' authority to compel public bodies to adhere to the law."

¶ 37    This is an "extraordinary request," which should be granted only when "there is proof of personal bias or under extreme

---

[15] Contrary to the Town Council's assertion, Guy's success on his claims should not be ignored or discounted because he cited, in his briefs, an unpublished opinion from this court and unpublished decisions from other courts.  In the first instance, the unpublished decision from this court was first permissibly cited for its persuasive value in the district court.  *See Patterson v. James*, 2018 COA 173, ¶¶ 38-43.  In the second instance, divisions of this court regularly cite with approval unpublished decisions from other jurisdictions.  *See, e.g., People v. Sharp*, 2019 COA 133, ¶ 36 n.7; *Gagne v. Gagne*, 2019 COA 42, ¶¶ 20, 36; *People v. Garrison*, 2017 COA 107, ¶¶ 50, 53.

circumstances." *United States v. Aragon*, 922 F.3d 1102, 1113 (10th Cir. 2019) (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1448 (10th Cir. 1996)).

¶ 38    There is, in our view, no indication that the judge harbored any personal bias against Guy or his counsel.  Nor did the judge fail to treat Guy's claims seriously or dispose of them in an arbitrary manner.  Admittedly, the judge was skeptical about the overall value of Guy's lawsuit, saying in the order that

- "[T]he value to the public of the required highly technical application of the law is *de minimis* in this case.  This is a hyper technical ruling that places form over substance but one that is required by Colorado law."

- "The Plaintiff stated multiple times that this was not a case about bad faith but rather a case requiring strict compliance with the statute – regardless of the practical value to the public.  The Court notes the philosophical public value the case creates, but the Court also notes

that in reality this case will more likely cause more harm to the public than good."[16]

¶ 39    But the court's comments must be viewed in context. The court had found that

- "[i]t is beyond question that each of the executive sessions was held for a proper purpose";

- Guy had not succeeded on claims that the notice of legal advice and personnel matters was deficient; and

- "there may be considerable dispute regarding the reasonable amount of attorney fees that should be awarded. It is possible or even likely, that the cost of litigating the reasonableness of fees will be greater than the fees themselves."

¶ 40    Given the context in which the court made its comments, we do not perceive an attitude of "disdain" towards those who attempt to enforce the COML. The court's comments about the relative

---

[16] The court had also commented during a hearing that (1) "at least as I read the statute, it was not the legislative intent to create a statute that would create an income stream for attorneys"; and (2) "[Y]ou can take it up with the Court of Appeals" [to tell me that you can] litigate for the sake of litigation to enrich attorneys . . . ."

value of the case, philosophically and practically, were made against the backdrop of only limited success by Guy and the prospect of a hefty attorney fees request to be paid from the public till.

¶ 41    But things have changed.  With Guy's success on appeal on other issues, the district court should be under no misapprehension about the value of his lawsuit.

¶ 42    All things considered, we have no reason to believe that (1) on remand, the judge would have substantial difficulty in casting aside his erroneous, previously expressed views; or (2) reassigning the case to a different judge is necessary to preserve the appearance of fairness.  *See Aragon*, 922 F.3d at 1113 (listing such considerations in the decision to reassign a matter to a different judge).  Consequently, we deny Guy's request for reassignment to a different judge on remand.  *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 763-64 (D.C. Cir. 2014) ("[W]e will reassign a case only in the exceedingly rare circumstance that a district judge's conduct is 'so extreme as to display clear inability to render fair judgment.'" (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994))).

*V.    Disposition*

¶ 43    We reverse the portions of the district court's judgment determining that the Town Council did not violate COML's notice requirements for legal advice and personnel matters; dismiss the portion of Guy's appeal related to district court's attorney fee order; and remand to the district court with instructions to enter judgment for Guy on the parts of the judgment mentioned above and to award Guy his costs and reasonable attorney fees incurred on appeal.

JUDGE HARRIS and JUDGE JOHNSON concur.